Good morning, Your Honors. May I please the Court? My name is Jennifer Anderson, and I represent the appellants. The appellants challenge the District Court's approval of... Do you want to reserve any time for rebuttal? I'm sorry, yes, I would like to reserve five minutes of rebuttal. Okay, thanks. Thank you for the reminder, Your Honor. The appellants challenge the District Court's approval of CERCLA consent decrees between the Arizona Department of Environmental Quality and 22 generators of hazardous waste at the Broadway-Pantano landfill site in Tucson. In ADQ's view, generators, such as the settling parties, are responsible for 60% of the estimated remediation costs, yet they have agreed to pay less than 1% of those costs while cutting off the appellants' right to contribution. This leaves the appellants potentially jointly and severally liable for the remaining $74.5 million in remediation costs. Counsel, I wonder if we could focus on, at least for me, a very critical aspect of this case. This case involves the state environmental agency, not the EPA. Yes, Your Honor. Stemming from the First Circuit's case where it speaks of a double swaddling, it almost sounds like Christmas, but whatever that is, the question is, does that apply to a state environmental agency? And if it does, what case law substantiates that point? No, it does not, Your Honor, and particularly not in this case. The District Court should not have deferred to ADQ's bare assertion that the settlements were fair and reasonable. The Supreme Court — Okay, so we've asked you to address it, so I'm not faulting you for addressing it because we've asked you to address it. But now suddenly you're arguing something you didn't argue below, correct? Yes, Your Honor, two things. First of all, a court has a duty to apply the correct standard of review, and the issue is not waivable. And for that, I would cite the court to Amato v. Gonzalez at 734F3rd 936. In addition, the arguments underlying why the court should not have deferred to ADQ were argued in the brief, albeit not focused on the standard of review and deference. But ADQ has certainly had the opportunity to respond to those arguments, and the District Court had an opportunity to assess it. Well, is the standard of review abuse of discretion and deference contained within that, or how does that work? Is deference really the — what level of deference? Is that really the standard of review, or is abuse of discretion the standard of review? Well, there are two things, Your Honor. First is whether Chevron deference should be afforded to the state agency. And the second level is the abuse of discretion standard that's applied to the District Court. So there's two levels there. And the court's question, as I understand it, focused on the deference that should be given to a state agency, interpreting and implementing federal law. And the Supreme Court held in United States v. Meade at 533 U.S. 218 that Chevron deference applies only when, one, it appears that Congress delegated authority to the agency to make rules interpreting a statute, and two, where the agency interpretation claiming deference was promulgated in the exercise of that authority. And here, Your Honor, ADQ does not meet either one of those prongs of Chevron deference. But let me ask you this. All right. So it's not really interpreting the statute here. True. So, I mean, and clearly, I mean, that would be an easier question to answer if it were a state interpreting Congress's statute. So we don't have that going on. But you do have someone that testifies. I think it's a chemical engineer that testifies. And I think the chemical engineer, I believe it was a she, said that she applied the EPA standards and those cases as far as that goes. So I'm just trying to figure out the logistics of how this works out. And my understanding of CERCLA is that the feds can do something, but if the feds aren't doing anything, the state isn't precluded from doing something. They then can, on their own, start going forward. Let's say that the feds think there's more important work elsewhere, but in your state you've got this big old contaminated dump site, and you decide you're going to do something about it. And the state's okay to do that. What are we going to require district judges to do? I mean, do they have to then hire their own experts? Do they have to then, you know, I mean, how is this going to happen? Well, Your Honor, I think there are a couple of layers to your question. And the first layer has to do with whether this analysis of Chevron deference applies here. And it clearly does, because the rationale that Ms. Vargas gave, first of all, Ms. Vargas did not, Ms. Vargas said we calculated the total volume that each of the PRPs contributed to the contamination. We calculated the total volume for the site. We did calculations. We relied on documents, witness interviews, estimates, assumptions. But Ms. Vargas failed, and the ADEQ failed to provide any of those documents or point to any of them. And the justification, Your Honor, was ADEQ's claim that it was following the EPA's guidelines for nonbinding preliminary assessment of responsibility, I believe it is, NBAR guidelines. But, Your Honor, ADEQ was misusing those guidelines. It's cherry-picking from EPA policy, taking the aspects that favors its actions, and ignoring the rest. NBAR is a preliminary, pre-settlement allocation process that's simply designed to bring parties to the settlement table. It was not designed to create judicially enforceable rights. Well, except if I were a district court, and so I then suddenly, you know, I have to become a chemical engineer here and just dig in everything in the weeds in terms of when you clearly have, it seems, you know, there seems to be some indication that some of the interveners are the heavy hitters, and then some of the settlers are the lighter weight people. But there's supposed to be oversight so that, let's say one of the heavy hitters came in and wanted to settle for, you know, 1% of the whole thing. And then that comes before the district court, and the district court looks at it and said, hey, you're responsible for at least 60% of this. I'm not going to approve that settlement because then that's leaving all the little people, you know, because there's always tons of people that touch this land, and you're apportioning it. So, I mean, how much in the weeds do you have to get? Your Honor, your question precisely illustrates why ADEQ's decision was so problematic. We have no, there is no basis to evaluate whether the interveners are heavy hitters or whether the settling parties are heavy hitters. The district court admitted in approving, in one of its orders, it admitted that ADEQ had not provided information from which the district court could assess whether they were, in fact, de minimis parties. And, Your Honor, EPA policy does not excuse anyone, including a state agency, from following the standard for, judicially created standard for approval of consent decrees under Canons. And that standard is that the agency must, the settlement allocations must be based on comparative fault that apportions, that rationally apportions liability to potentially responsible parties according to their harm. They don't have to be perfect. I mean, there's a saying that it's called the first to squeal gets the deal. And, I mean, early settlements, sometimes you might end up getting a little better deal than if the whole thing went to trial. But that doesn't per se mean that, that in and of itself doesn't mean that the early settlement, let's say you, you know, you save $100,000. I mean, that doesn't necessarily say that it wasn't a proper settlement, right? Well, Your Honor, it's important to look exactly at what ADEQ is asking this court to defer to. ADEQ has not, did not come to the district court and is not coming to this court saying, here are our calculations. Here are the assumptions that we made. Here are the documents we relied on. We think these are plausible approximations of liability. Sure, perhaps if we made different assumptions, it, the result might be different. But this is reasonable. This is plausible. And the district court should defer. ADEQ came forward. They acknowledged they have volume. They've calculated the volume. They've calculated the allocation of liability. They have, they claim they have information about what activities the settling parties engaged in, how much volume, how much waste they generated, how much was transported. Are they entitled to any deference for their expertise? Do they get any? Or is it just de novo review by the district court? You argued it was abusive discretion. So if you argue it's de novo now, you're coming up with something new. But I won't fault you for that. Well, Your Honor, I believe it is de novo review of the state agency, but abusive discretion of the district court. Now, your question is, is ADEQ ever entitled to deference? And as Montrose said, the true measure of deference, of course, is the persuasive power of the agency's proposal and rationale. It is possible that if ADEQ came back and said, here is the information we acknowledge we have. Here are our calculations. Here are the documents. We've reviewed 800-plus witness interview summaries and 100,000 pages of documents. Here are the documents. Here are the interview, you know, summaries that we relied on. It is possible that ADEQ would be entitled to some deference there. But where they're not entitled to deference is where they come in and say, based on an inapplicable EPA policy, we don't have to give the district court or the interveners any information, no information. Can I just ask for clarification on this? You're talking about an abusive discretion, as is my colleague. But isn't it Hornbook law that if you apply the wrong law, that is an abusive discretion? That's right, Your Honor. So in this case, if the state agency is not entitled to double swaddling deference, whatever that is, the wrong law was applied here because the district court repeatedly says, I'm not going to get into this. I don't have this. There's this problem. There's that problem.  Doesn't the whole case boil down to the question of, was the law that the district court had to give the state agency double deference? If it didn't, then the district court made no findings required under Montrose, and we've got to send it back for the district court to do its work. Is that a fair statement? That is precisely correct, Your Honor. And, in addition, Montrose instructs that abusive discretion, the discretion of a district court does not allow it to turn a blind eye to an empty record, and that is precisely what the district court did here. If the court were to affirm, it would mean that the canon standard for approving judicial consent decrees would be substantively meaningless. The agency could always come to the court and say, we believe these settlements are reasonable, but we don't have to show you our math. We don't have to deal our cards face-up. Are you asking us, though, to cause a split with the Second Circuit? I'm sorry, Your Honor. I'm not sure I understand the question. Well, if we were to say there's no double swaddling, if we say they're not entitled to any deference, would that be a split with the Second Circuit? No, I don't think so, Your Honor. The Second Circuit, my understanding is they were interpreting the statute, right? Are you referring to canons, the canons decision? Yes, I am. Okay. No, Your Honor, it would not be an odd. Or maybe Bangor. Is it canon or Bangor? I'll address that case at all. Okay. The First Circuit. Yes, that's the First Circuit. Okay, I'm sorry. No problem, Your Honor. Two things. First of all, in canons, a key aspect underlying the court's deference to the agency was the fact that EPA had expertise in implementing CERCLA, and the fact that the process was both substantively fair in terms of full information of disclosure and procedurally fair. That was a situation where you had extensive arms-length negotiations between the parties. You had full disclosure of all the information the agency had. That is simply not the case here. First, ADAQ does not have expertise in implementing CERCLA, and nowhere is that fact better illustrated than in this case, Your Honor, where the district court is asking this court to ignore the canon standard and to approve these consent decrees on an empty record, and it's misusing EPA policy as a justification to do that. Doesn't this really get down to the question we started with? Because both canons and charter, the First Circuit cases, 1990 and 1996, involve the EPA. This doesn't involve the EPA. If there is double swaddling, it is to the EPA, and I have been unable to find, and I'm going to be interested to ask the State, if it has found any case in which a State agency has been given double deference. Let's just take for a hypothetical. Let's assume West Virginia, which has had some interesting problems of late. Let's assume that the equivalent of Arizona's agency here in West Virginia came to the district court and said, you know, we've checked the water. We think the water is just great. You can't get behind anything we're saying here. You need to rubber stamp this. Would that be appropriate under CERCLA? Absolutely not, Your Honor. The district court abuses its discretion when it rubber stamps a settlement on an empty record. These cases, these CERCLA cases, EPA and the rollout of these cases, EPA developed enormous expertise, nationwide uniform application of CERCLA law, and it has all kinds of people who have enormous expertise. In the State agencies, some, and it may be Arizona, I have a great deal of respect for Arizona's governmental institutions. They may have wonderful expertise, but we don't know that. And the district court didn't probe that, didn't even look into it. We just have to guess. And so the question is, does the law require us, like we presumably have to do with the EPA, to simply say, whatever you decide, folks, we're going to back it up. We don't get behind it. We don't ask the questions, just like happened here. Here we have a State agency, no questions asked, admitted statements by the district court about what was not investigated, about what was not considered. There's no parameters at all to it, very much like Montrose, where the EPA was involved, where they actually got a turnaround. Is that a fair statement? Yes, Your Honor. And I see my time is running low, but I would like to, I want to talk about just two cases real quickly, if I may. First is Orthopedic Hospital v. Belshey, and that is 103 F. 3rd, 1491. And that is where this Court said that a State agency is not entitled to deference in interpreting a Federal statute because it does not have the expertise. Right, but we're not interpreting the Federal statute here. Well, and the second case that I wanted to just mention, Your Honor, is you referred to the First Circuit's decision in the City of Bangor, where the First Circuit said, we are not going to give the State agency as much deference as EPA because it doesn't have its expertise. In that particular case, the Court did afford some deference to the agency, but that case is very different from the case that is before this Court. In that case, the reasoning, the settlement amounts were, it was well-reasoned. There was a record on which the district court could defer to the agency's expertise, and there was no issue, as there is in this case, about whether the agency provided the information it admits it has to support those settlements. If you want to save any time, you probably should sit down. Yes, Your Honor. Thank you. The Court should vacate and remand. Good morning. Good morning, Your Honor. May it please the Court. My name is Jeff Cantrell. I'm from the Arizona Attorney General's Office, and I represent ADEQ. I'll be speaking for 15 minutes for ADEQ. And then for the remaining 5 minutes, Mr. Chris Thomas from Squire Sanders and Dempsey will be speaking concerning the settling defendants. Okay. You know, I think you can sort of see where we're focused on this. And how, you know, how is the level of deference that a district court applies different where a state agency rather than the EPA has entered into a settlement? And does the level of deference make a difference in this particular case? And I suppose, you know, having been a state judge before I was a federal judge, I always bristle a tad when the feds think that they're so much smarter than the state people. So, and they always do think that. So I'm just not. So, you know, I guess from the standpoint that it's this isn't we're not interpreting the statute here, but and I'm wondering if at the end of it how we've asked both of you to address this quickly for the first time on oral argument whether it might be beneficial if we need some supplemental briefing on this as well. So go. Thank you, Your Honor. I think there are several issues that can shed light on this. First of all, we were able to find a First Circuit case, a 2008 First Circuit case, City of Bangor v. Citizens Communication Company, which is at 532F370. And your counsel, she mentioned that, yeah. And at that point, the Court did say that we give deference in recognition that the state agency has some expertise. This lesser deference does not displace the baseline standard of review for abuse of discretion, which says two things. First of all, it's a recognition that there are technical issues, not legal issues, that the State does possess expertise in that are applied. So when the State is involved, it may not necessarily be interpreting Federal law, but it's certainly looking at technical issues that are involved. The next question is if you actually look at CERCLA under Section 113F2, a party who resolves its liability to the EPA, to the State, or to a Federal tribe in either a judicial or an administrative settlement is entitled to contribution protection. That in itself suggests that CERCLA is structured to provide a certain amount of deference to State agencies because that contribution protection does not. Kagan. But what if, okay, let's say I buy your argument that the standard of review is abuse of discretion, right? And so that, and that is what everyone was arguing down below, abuse of discretion. So let's say that. But let's say contained in, if you're doing Venn diagrams, then in there the deference is part of what you look at for abuse of discretion. If it's some deference but not exactly double swaddling or the same deference, then does that taint the abuse of discretion? It almost as if there's arguing for a middle level of discretion that, or deference that's accorded to State agencies. But that's not the case at bar because the case below, the State moved the lower court to enter the consent decrees. There was full briefing on that motion. There was oral argument on that motion. And below, the court considered that and determined that she needed additional briefing and ordered supplemental briefing afterwards. So clearly we had a situation where the lower court determined that there wasn't was insufficient evidence, insufficient information before it when the State. Okay. But that's not really going directly. But that still wasn't dealing with that level of deference. And that's not what the appellant was contesting there. It was the abuse of discretion saying you're abusing your discretion, but it wasn't you know, we're asking you to address a different issue here. And they've jumped onto that bandwagon that, you know, as any good advocate would. And so if the court was wrong about the level of deference, even though the court really wasn't called on that, how does that permeate the abuse of discretion analysis? I'm not sure that it really permeates the analysis, per se. The court below identified the appropriate standard in both Newcorp and Montrose and said that the deference is due to, depends on the persuasive power of the agency's proposal and rationale. And yet the district court cited virtually nothing where the court analyzed the parameters of responsibility, how much there was, who contributed to what. The very problem that Judge Hawkins dealt with in Montrose, and that did involve the EPA. That's what troubles me, and I'm hoping you can help me. What did the district court specifically say, whatever was considered, to show that there was an analysis of the relative fault of the people involved? You had somebody who was apparently fairly questionable testimony. The State paid his costs. Clearly a conflict. You had all these other little things involved that it seemed to me the district court essentially just said, you know, this is a really good agency. They're really fine folks. There's a lot of stuff in here, and I'm not going to get behind this. I'm just going to give it my imprimatur. Isn't that what happened? In fact, Your Honor, no, that's not what happened. Okay. Tell me what happened. And the difference is there are several things I'll address. Hopefully I'll remember them all. With respect to the witness that was questioned in the pleadings and so forth, in the complaint, the amended complaint that was submitted before to the court, there were, and I'll pull it up here in a moment, there was a factual basis that was indicated for all of the settling parties. And I'll start you at the excerpt of record, page 0494, where the various different defendants are listed, and a narrative for the basis for each of those defendants is listed. And in particular, on page 0497, Floor Enterprises has indicated that two former Tucson area solvent recyclers collected waste. This is obviously one more witness than, assuming it was one more witness than the one that was challenged. On ER 0500, for Rowe Enterprises, the former City of Tucson Sanitation Department waste hauler and the former garbage service company of Tucson incorporated waste hauler was listed. And again, on page 0501 for Texas Instrument, three former Tucson area solvent recyclers and two former City of Tucson Sanitation Department waste haulers were referenced. So even if there was an argument that the one witness's credibility could be attacked, at least for the case of Texas Instruments, that leaves four other witnesses. But did the district court refer to those witnesses? The district court did not refer to those witnesses. But there was clearly evidence that was before the district court. It was in the complaint. Well, okay. This is what I'm struggling with. If I come into the district court, and I'm in your role, and I have 100,000 pages of documents, and I say, it's in there, Your Honor. It's all in there. And the district court says, that looks like a lot of documents. I'll bet it is. I approve it. Is that okay? That's not the issue. That's not okay. And that's not the issue that's before the court. Montrose would forbid that, right? Correct. And What does Montrose require with respect to a determination of the relative fault? What does the district court have to say, even in an EPA case, because that's what Montrose was? Let's assume for a minute that there's an intermediate level of scrutiny. What does the district court have to analyze and determine in order to discharge the district court's statutory responsibility? Your Honor, as I read Montrose 2, what's required is that there has to be some sort of a basis, a total remediation, a total remedial cost estimate by which the court can then compare the relative liabilities. And how was that done in this case? And what were the numbers? In — in — let me — I'll address that in the fact that in Montrose, we essentially have a case where the special master made his analysis, made a recommendation to the lower court, and essentially said, trust me. In our case here, we have the information that was submitted to the court, along with the methodology on how it was determined. Well, so essentially you have a settlement amount that directly corresponds to the party's estimated share of liability. That's correct, Your Honor. Okay. So — but you concede that if it's trust me, I'm the government, we're here to help, that's never going to be — that's not going to be enough. On its face, that's not enough. And so if the agency simply said, trust me, we've made a reasonable assessment based on our expertise, that's not good enough? That's not good enough, Your Honor, but — Okay. So why is this more here? This is more here because, as in the Montrose case, we have an estimate of how much the total remedial cost is going to be. We have a methodology that was set forth on explaining how that was determined based on past costs, based on projections for future costs, operation and maintenance, and so forth. So we determined that essentially the total remedial action cost will be approximately $75 million. $75 million. I'm sorry? $75 million for the whole thing. That's correct, yes, Your Honor. So then what do you have relative to the people that you're asking us to approve the settlement on? What we have relative to those is we have, again, the information that was contained within the — within the complaint that specifies or at least references the various different witnesses. The Court identified that the State had explained it, had the documents before it. We have the affidavit of Anna Vargas, who explained how the methodology was used and how the various different parties were determined using EPA methodology. We also have in the related deposition of Mr. Blankenship the verified petition that explains what the anticipated testimony of at least 13 of these settling parties was going to be. So we have all of that put together. And I'll also direct the Court to the — to Campbell v. Washington, Department of Social and Health Services, which is 671 Fed 3rd 837 at 842, where the district court's decision may be affirmed on any grounds unsupported by the record, even if not relied upon by the district court. Kagan. Well, what was counsel's best argument that that wasn't, that didn't, that it didn't approximate the liability? What, in terms of the numbers that they came up with as to what it should be, what was the discrepancy? I'm not sure as I understand the question. Did they come up where they said it should have been X amount, or did they, did they come up with, you've underestimated it by X amount, or did they just say this isn't good enough? At this point, if what you're referring, if I understand the question properly, the intervener appellants have never stated what they thought was wrong. They provided no affidavits from their experts analyzing the documents they had. They had full access to the entire record that the State had, with the exception of privileged documents. They've had, they had access to that information, the witness interview summaries, the documents, and so forth. And they never provided any sort of an analysis of the documents indicating that their analysis says blah. It's... I thought they had, I know they had at least one expert, maybe two, that thought that the numbers that you all had come up with were wildly wrong. Am I recalling something incorrect? I don't know of anything of that in the record, Your Honor. That's unfamiliar to me. Perhaps I'm misrecollecting. Essentially, what happened from our perspective is that the interveners were unhappy with the settlement, and they objected. And they had full, they had a full opportunity to participate in briefing and an oral argument and supplemental briefing, and essentially lost below. And now they're asking for essentially a second bite at the apple. What, in your view, is the purpose of Congress in requiring judicial approval? Why do you need judicial approval? Why was it required? Why didn't they just let the EPA or the state agency settle the case without judicial approval? My understanding, Your Honor, is that by requiring judicial approval, because contribution protection is a benefit that is conferred to settling parties, you're extinguishing somebody's right, theoretically, so therefore you need to have a notice and opportunity, a due process consideration. And that's why judicial approval is required, is because you're essentially extinguishing a person's right to contribution. Well, because it's supposed to be, if they get hit, it's joint and several, right? Say again? It's not joint and several if they get hit. If you don't settle, I mean, so this person can walk away and say this is all I'm going to pay, I'm done, and Raytheon and others can't ever come back and try to get anything from them. But if they went to a hearing and they all got hit as having something to do with it, can — is it joint and several? At this point, Your Honor, there's two questions. First of all, under Arizona State law, which DEQ is charged to implement, there is no joint and several liability. It is proportional liability only. So as ADEQ interprets Arizona law, a party can only be responsible for the proportional share of the total cost of remedial action cost. By definition, if a party is only responsible for the proportional share, they cannot have a contribution claim, a claim against some other party that had settled, because they're only liable for the proportional share. Also under Arizona law is when the final allocation is done, all of the parties that are notified that they have a responsibility to pay, they have the opportunity to challenge that allocation both administratively and judicially. But what about the EPA? If the EPA were bringing this, would it be different? If EPA — EPA has the advantage that it runs under strict — under CERCLA, not under Arizona WARF. And under EPA analysis, there's joint and several liability. Okay. And generally how that works is EPA will find some party to conduct the work and tell that party that then it has the opportunity to go and collect contributions from the non-state. But you brought this case in the district court under CERCLA, did you not? I'm sorry? You brought this case in the district court under CERCLA, right? Yes. We brought this in district court. This is a Federal law issue. Let me ask you this. The district court at ER-8 declined to review the evidence stating, review the specific evidence — Just one second. I just want to tell you, I'm going to give you five minutes, all right, so that you don't want to knock it down from the — Don't panic. Don't panic. They answer Judge Smith's questions or anyone's questions, but I will give you five minutes. The district court indicated it was not going to review the evidence stating, in quotes, review the specific evidence relating to each party would require this court to conduct an in-depth analysis or an in-depth review of the evidence, second-guess the agency, and deny the required deference to the ADEQ. Didn't the district court, in effect, abdicate its responsibility to review the evidence if there is no double swaddling of deference involved here? We don't believe so, Your Honor, for the reason that there were facts before it in the amended complaint and the fact that the court clearly asked for supplemental briefing. So we did have the motions to enter prior. We had the oral arguments after which the court determined, no, I need more information. This is clearly not a — But the supplemental briefing did not deal with the technical aspects of whose was relative responsibility. Well, supplemental briefing included the affidavit of Ms. Vargas, who explained in detail how the various different responsible parties or categories using EPA methodology how the percentage of liability for generators, for transporters, and for owner-operators was determined. So there was a technical analysis, and attached to the affidavit were the — were three EPA documents on how these analyses were done. But there was no specific details as to each settling party? No. No, there was no detail. There was no indication that, and the court says this, that document A indicates such, so therefore we come up with that. But at that level of review, then at — then the — the CERCLA preference for early settlement kind of goes away, that instead of early settlement goes away, because then the reviewing court for early settlements is essentially conducting the trial that was — that the whole early settlement is designed to obviate. It just gets down to what's the proper role of the district court, right? Essentially, that's correct, Your Honor.  All right. So if — I know we asked you to — if we decide that this is the issue that this turns on, would you want to do supplemental briefs? If the Court orders it, we would be more than happy to, yes, Your Honor. All right. Okay. All right. You have five minutes. Good morning. Thank you. May it please the Court, my name is Chris Thomas. I am the counsel for Texas Instruments Below, and I speak on behalf of TI and the other settling parties today. I'd like to first take a step back here. The argument of the appellants is that the district court abused its discretion because it failed to demand additional evidence of substantive due process. There are a couple assumptions here in the appellant's argument that are, in fact, not correct. The — first off, although this case was brought under CERCLA by the state, state law, as is reflected in the proceedings, prohibits the state of Arizona from seeking to impose joint liability. Additionally, and more importantly — So you're suggesting that the district court in this case did not have the ability to do what CERCLA permits? I am suggesting that the district court was aware of the fact that the liability that the appellants would face in the event that the settling parties paid too little would, in fact — if the settlements are too cheap, then the consent decrees themselves provide that the shortfall will come out of the state's pocket as an orphan share, rather than out of the non-settling parties. That's remarkable. I thought you brought the case under CERCLA. Now, I understand there's a state law, but if you're not there under CERCLA and you're not asking for CERCLA remedies and having these settlements, what's the point of bringing it under CERCLA? I don't get it. Well, it is necessary under 113-F2 of the CERCLA statute for CERCLA liability to be resolved in order for contribution protection to arise from the settlement. So that is what you all were looking for, is what CERCLA provides. We are looking for CERCLA contribution protection, and we have it. Your Honor, let me finish. But the important factor here is that the very consent decrees themselves, and there is one found in tab 21 ER 0476, the court has ordered that any settlement shortfall come out of the state's orphan share responsibility, rather than the liability from the non-settlers. So although CERCLA as a statute envisions that disproportionate liability can be an appropriate result, that is not possible here given the very terms of the court's orders. Does that bear on our question of what level of deference is due under CERCLA to the district court's analysis? I think it's clear. Nobody seems to dispute that the standard review for the decision of the district court that the decrees were fair, reasonable, and consistent with CERCLA is abuse of discretion. Okay, but do you agree that if the district court applied the wrong law, that's an abuse of discretion? I disagree with the premise, Your Honor. Oh, that's interesting. So you're saying if the district court applied something that was absolutely, completely prohibited under Supreme Court law, the district court would not abuse its discretion? No, Your Honor. Your Honor, my point was that I don't think the record below suggests that the district court provided undue discretion to the state agency here, and whether the state agency gets- You said undue discretion. You mean undue deference? Yes, sorry, Your Honor. Okay. Whether DEQ was given some, little, or no deference- Was the word double swaddling in there somewhere, though? Yes, it is, but also the court, consistent with this court's ruling in Montrose, said at the end of the day, what is most persuasive and determinative of how much deference to give an agency- You're saying that whatever the district court did and whatever the standard is, it was okay? Yes, I'm saying that it's an interesting academic issue whether state agencies are entitled to the same- Hardly academic. It involves this case. In this case, regardless of the level of deference that would be afforded to DEQ, the district court's decision that the decrees were fair, reasonable, and consistent with CERCLA was appropriate. Did you say that the actual order that was ended in this case took out of the case the whole issue of the non-settling parties being harmed? Absolutely, it did, Your Honor. And again, in the appellant's excerpts of record, tab 21 is one of the illustrative consent decrees. They all have an identical provision in paragraph 32 that says, if settler's allocated share is determined by the director or an allocator, whichever occurs later, to be greater than the settlement out, the deference shall be deemed an orphan share of liability pursuant to Arizona law. So there is zero possibility, even if Arizona state law changes tomorrow and allows DEQ to pursue joint liability, this is an order of the court that clearly states that the appellants will never bear the risk of the settling parties not paying enough money. But counsel, that deals with a matter of Arizona law. It says nothing about the intervenors or their rights as amongst each other or their right to sue these other folks. So if they had no right to sue these other folks for contribution, how could there be any possibility that Arizona would bear those costs? Your Honor, this isn't the order of the court says any shortfall will be borne by the State of Arizona rather than the non-settlers. Since my time is running low, let me mention one other thing. I'm sorry? It's going up. Then if you'll indulge me one more minute. The other thing that's in the record here. I'll give you one more minute. I'm giving it to you. Thank you. Interestingly enough, one of the appellants is Pima County. In 2000, 10 years before the settling parties here entered into a settlement, Pima County entered into its own judicial consent decree before the same judge that resolves its liability for half of the landfill. That's in the record. And let me direct you to that. That's tab 20, starting at ERO 429. Pima County was given a covenant not to sue by the State of Arizona, as were settling parties. Pima County was given contribution protection by the State, as were the settling parties. In addition to that, actually, they got a release. Wrap it up. Okay. My point is, Your Honor, that that settlement that Pima County obviously supported occurred 10 years prior to these settlements, prior to the disclosure of $100,000 or 100,000 pages of documents. If the record was sufficient then for Pima County to settle, then clearly it's sufficient now, 10 years later, after all this additional document protection. Okay. I think Judge Smith. That's a non sequitur to me. What are you talking about? Well, Pima County and the other appellants argue that the district court You're saying that if Pima County settled 10 years before, and that has some bearing on what the hypothetical 100,000 pages of documents have to do with the standard of review by the district court? What does that have to do with that? It's not a standard review issue, Your Honor. My point was that it is inconsistent for at least Pima County, as an appellant, to argue that the district court lacked sufficient information here. Oh, so you're saying that because Pima County didn't make that argument, we can't make it, these folks can't make it here. I'm not making a judicial estoppel argument, Your Honor. I'm just noting that it's rather ironic that people that complain about lack of record today had even less of a record then. Standards to use about legal arguments? I'm shocked. I am shocked, too, Your Honor. Thank you very much. All right. Thank you. All right. For the appellant, I'm going to restore you back to five minutes since we've kind of ‑‑ I'll give you five, and then if we need you more, you stay until you're told to be seated. Thank you. Thank you, Your Honor. Could I ask you, as I'm confused, that provision in the consent decree that says that Arizona will make up any shortfall, doesn't that take care of the prejudice that you claim you're suffering? No, Your Honor. The district court specifically said on page 28 of the excerpts of record that there is no guarantee or statutory limitation that will restrict the State from proceeding under CERCLA against movements. But he's relying not on what the district court may have said somewhere, but he's relying on the provisions of the consent decree.  Well, Your Honor, the district court did not interpret the consent decrees as precluding ‑‑ for example, the state, the ADEQ says that it cannot currently, under WARF, pursue the interveners for joint and several liability. The district court said that there was no guarantee it could not do so at a later time, but when we asked for judicial determination of that, the State opposed it. The State opposed a ‑‑ It's all irrelevant. He was reading from the consent decree itself. Excuse me, Your Honor. When you get that, aggregating on to what Judge Corman said, can you tell me whether what this talks about in the consent decree, whether the district court was simply saying that the people in this 1% group, roughly, they're covered. They're covered. If there was any more exposure to these people, the State of Arizona is directed to pay for it. My question is, if that's true, who would possibly be suing them, other than the intervenors, who are not covered? I'm sorry. I'm sorry. Okay. So I'm trying to understand this part of the consent decree. What I read and what I understood was that the district court was saying as to this 1%, roughly, this is a final settlement for them, and if for some reason any of them has more liability than what's contained in this consent decree, it will be the responsibility of the State of Arizona to pay it. However, what was not discussed was who would possibly be suing these people for additional liability, other than the intervenors? And, of course, the answer is nobody. And the intervenors, of course, are not protected in any way by this decree. The intervenors are on their own. They're all subject to joint and several liability. This decree has nothing to do with that, does it? Okay. So, Your Honor, yes. The intervenors certainly would be the parties that would — whose contribution rights have been cut off. And there may be other potentially responsible parties. They wouldn't be in the 1%, though. No. That's correct, Your Honor. And so two things. Number one, the State says not currently. WRF does not currently allow for joint and several liability. But it brought this action under CERCLA. State law can change. And one can only surmise they are certainly hoping that the law will change. Your Honor, with respect to your question, what the consent decree says is, if settler's allocated share is determined by the director or an allocator to be greater than the settlement amount, the difference shall be deemed an orphan share of liability pursuant to ADEQ. So it's going to be deemed an orphan share. The question then becomes, who is responsible for paying orphan shares? Currently, under current law, ADEQ is responsible for paying for orphan shares. However, that could change. If that aspect of WRF changes, then the intervenors could be liable for the orphan shares. And the district court specifically recognized that. It simply refused to make a judicial determination that the intervenors could not be held jointly and severally liable. Let me ask you, what did you put in the record in the district court that showed that these people that settled, that they actually were, they owed more? Well, here's the problem, Your Honor. Well, I know you said you didn't get more discovery and all of that. But, you know. We have no way of assessing what these parties did. We have no way of knowing the volume of waste that ADEQ is saying that they produced. We have no way of knowing how much was transported to the site and over what period of time. They have not provided. It's like they've, it's like I ask you for your phone number and you hand me the phone book, but you don't tell me your name. And even worse, Your Honor, this ADEQ. But you're not entitled to a full trial there. We know that. We're not asking for a trial, Your Honor. We're asking for the information that ADEQ admits it already has. And I want to clarify just one potential misconception. These 800-plus witness interviews and 100,000 documents are not in the district court record, Your Honor. And for these reasons, the court should vacate and remand. Thank you. Okay. Does anyone have any additional questions? All right. Thank you both for your arguments. That was a well-argued case. This matter will stand submitted.
judges: Korman, Callahan, Smith